**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RELIASTAR LIFE INSURANCE COMPANY,** | ) | |
| **Plaintiff/Counter-Defendant,** | ) | **No. 24-cv-5325** |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| **CAPITOL WHOLESALE MEATS, INC, et al.,** | ) | |
| **Defendants/Counter-Plaintiffs.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This is an interpleader action related to a $5 million dollar life insurance policy issued to Eugene Fontanini by plaintiff/counter-defendant, ReliaStar Life Insurance Company ("ReliaStar"). Defendants/counter-plaintiffs are Capitol Wholesale Meats, Inc., the owner and sole beneficiary under the policy, and the former shareholders of the since dissolved Capitol Wholesale Meats, Inc. (namely, JoAnne Fontanini; the Estate of Eugene O. Fontanini; the Descendants Trust Created Under the Jennie Fontanini Irrevocable Grantor Trust #1 dated January 10, 2003; the Eugene Fontanini Irrevocable Grantor Trust #1 dated January 10, 2003; and the JoAnne Fontanini Irrevocable Grantor Trust #1 dated January 10, 2003) (collectively, "defendants").

ReliaStar has already distributed the death benefit to defendants pursuant to the parties' partial settlement agreement. As such, the sole remaining issue before the Court in the parties' cross-motions for judgment on the pleadings is whether ReliaStar must pay penalty interest due under either the relevant provision of the Illinois Insurance Code, 215 ILCS 5/224(1)(l), or the

language of the policy itself. For the reasons set forth below, the Court grants ReliaStar's motion for judgment on the pleadings, (Dckt. #59), and denies defendants' motion for judgment on the pleadings, (Dckt. #63).

## I. BACKGROUND[1]

The Court draws the following facts, which are largely undisputed, from the pleadings, (Dckt. ##9, 23 & 26), the documents attached thereto, and any information subject to judicial notice. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[A] court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

### A. The Policy

On or about March 20, 2010, Eugene Fontanini (hereinafter, the "Decedent") applied for a $5,000,000 life insurance policy from ReliaStar. (Dckt. #23 ¶11; #9-1). The application designated Capitol Wholesale Meats, Inc. ("Capitol Wholesale Meats" or "CWM") as the owner and sole beneficiary of the policy. (Dckt. #23 ¶12). On July 14, 2010, the Decedent was issued ReliaStar life insurance policy number AD20282801, with a face amount of $5,000,000 (the "Policy"). (Dckt. #26 ¶12). With respect to interest, the Policy provides as follows:

> If we pay the Death Proceeds more than 15 calendar days after the date we receive due proof of the death claim, we will pay interest beginning on the 16th calendar day at an annual interest rate of 9.00%

(Dckt. #23-2 at 41).

[1] This Court has jurisdiction over this interpleader action pursuant to 28 U.S.C. §1335, as well as diversity jurisdiction pursuant to 28 U.S.C. §1335.

**B. The Dissolution of Capitol Wholesale Meats**

On August 16, 2017, Capitol Wholesale Meats issued a "Unanimous Written Consent of the Board of Directors," expressing that the Board of Capitol Wholesale Meats had determined that it was advisable and in the best interests of the company to liquidate and dissolve. (Dckt. #9 ¶¶14–15; #9-3). The Unanimous Written Consent attached a "Plan of Complete Liquidation and Dissolution," which provided for the disposition of all assets of Capital Wholesale Meats and distribution of the assets to certain of its creditors and stockholders. (Dckt. #23 ¶15; #9-4). As relevant here, the Plan of Liquidation provided as follows:

> **2. Cessation of Business.** After the Effective Date, [CWM] shall cease the active conduct of its business, proceed to wind up its business affairs, sell or otherwise liquidate any and all properties and assets which in the judgment of any officer or director of the Corporation (each, an "Authorized Person" and, collectively, the "Authorized Persons') should be sold to facilitate the liquidation and dissolution of the [CWM], and distribute its properties and assets to its Shareholders in liquidation of [CWM], all in accordance with this Plan. ***All distributions to the Shareholders effected pursuant to this Plan shall be made pro rata to each Shareholder in accordance with his or her respective Percentage Interest. For purposes of this Plan, the term "Percentage Interest" means, with respect to a Shareholder, the percentage set forth adjacent to such Shareholder's name on Exhibit A.***
>
> **3. Sales of Assets.** From and after the Effective Date, ***the Authorized Persons are authorized from time to time to negotiate and consummate sales of all or any portion of the assets, properties, and rights of [CWM], or to distribute assets of [CWM] in kind to the Shareholders in order to accomplish the liquidation of [CWM].*** Any and all sales of assets may be on such terms and conditions as an Authorized Person, in good faith and in his or her reasonable discretion, deem beneficial to [CWM] and the Shareholders; provided, however, that all such sales shall be bona fide sales conducted at arm's-length and for a consideration not less than the fair market value of the properties sold as of the date of the sale. Any such sales or distributions in kind may, in the good faith, reasonable discretion of the Authorized Person, include the assumption by the purchaser or by the Shareholders of any or all of the liabilities of [CWM].

(Dckt. #23-3 at 5–6) (emphasis added).

As such, pursuant to the Plan of Liquidation, all property and assets of Capitol Wholesale Meats that were to be distributed should be distributed "pro rata to each Shareholder in

accordance with his or her respective Interest" as purportedly set forth on Exhibit A to the Plan of Liquidation. (Dckt. #23 ¶16; #9-4 at 2; #23-3). At least as of the filing of the amended complaint, ReliaStar "had not received a copy of Exhibit A attached to the Plan of Liquidation." (Dckt. #9 ¶17).

On December 11, 2018, Capital Wholesale Meats filed Articles of Dissolution with the Illinois Secretary of State. (Dckt. #23 ¶18; #9-5). The Articles of Dissolution indicated that the dissolution was by "written consent signed by all shareholders." (Dckt. #26 ¶17; #9-5 at 2).

### C. The Claim Under the Policy

The Decedent passed away on November 28, 2023. (Dckt. #23 ¶20). As a result of the Decedent's passing, the Policy's death benefit became due and payable to the beneficiary, i.e. Capitol Wholesale Meats, which by that point had been dissolved for six years. (*Id*. ¶21). According to ReliaStar, however, it did not receive a request to change the owner or beneficiary of the Policy at any time prior to the Decedent's death. (Dckt. #9 ¶22).

In any event, on or about March 27, 2024, defendant JoAnne Fontanini, the former president of Capitol Wholesale Meats, submitted a claim for the death benefit under the Policy. (Dckt. #23 ¶23; #9-6). Enclosed with the claim was an affidavit from JoAnne. (Dckt. #23 ¶21; #23-7). In her affidavit, JoAnne explains that Capitol Wholesale Meats was dissolved in 2018, and she attests that at the time of the dissolution, the shareholders and their respective interests were as follows:

a. 4.91% - Estate of Eugene O. Fontanini

b. 4.91% - JoAnne Fontanini

c. 41.18% - Descendants Trust Created Under the Jennie Fontanini Irrevocable Grantor Trust #1 dated Jan. 10, 2003

d. 25.5% - Eugene Fontanini Irrevocable Grantor Trust #1 dated January 10, 2003

e. 23.5% - JoAnne Fontanini Irrevocable Grantor Trust #1 dated January 10, 2003 (Dckt. #23-7 at 3).[2] Along with her affidavit, JoAnne provided certain Capitol Wholesale Meats documents, namely (1) the August 16, 2017 Unanimous Written Consent; (2) the Plan of Complete Liquidation and Dissolution of Capitol Wholesale Meats, and (3) the Articles of Dissolution.[3] JoAnne requested that ReliaStar pay the death benefit in accordance with the percentage interests outlined in her affidavit. It is undisputed that ReliaStar received JoAnne's claim and the accompanying materials on March 29, 2024. (Dckt. #23 ¶24).

**D. ReliaStar's Interpleader Complaint and Defendants' Counterclaims**

On June 26, 2026, because ReliaStar was "unable to determine how the Policy death benefit should be distributed," it filed this action, seeking interpleader relief. (Dckt. #9 ¶27). According to ReliaStar, "even if ownership of the Policy was distributed to the shareholders of Capitol Wholesale Meats according to the percentages in the JoAnne Affidavit," it was "unable to determine the effect this distribution of ownership had, if any, on the beneficiaries of the Policy." (*Id.* ¶28). After the complaint was filed, the Court granted ReliaStar's requests to deposit the $5 million death benefit (plus any accrued interest), along with approximately $73,000 in the way of a premium refund, with the Clerk of Court. (Dckt. ##11, 20).

In response to the interpleader complaint, defendants filed a counterclaim. (Dckt. #23). According to defendants, "[a]lthough ReliaStar had sufficient information on how to distribute the Policy death benefit . . . ReliaStar ignored its duty to pay the death benefit (plus any accrued interest) to the [defendants] according to the distribution reflected in both the Plan of Liquidation

---

[2] These percentages are the same as those listed in Exhibit A to the Plan of Liquidation. (*See* Dckt. #23-3).

[3] Although the parties' pleadings were somewhat unclear as to exactly which documents were submitted with JoAnne's claim, the parties' briefing provides further clarification and, at a minimum, Reliastar concedes to receiving these documents. (Dckt. #59 at 3).

and JoAnne's Affidavit," thereby violating 215 ILCS 5/224 and the Policy's clear and unambiguous language. (*Id*. at 14–15). Based on these violations, defendants seek interest under 215 ILCS 5/224 (Count I), or, in the alternative, under the Policy (Count II).

### E. Partial Settlement

On February 20, 2025, at the joint request of the parties, the Court entered an "Order of Discharge and Disbursement" authorizing the disbursement of the previously deposited interpleader funds to the former shareholders of Capitol Wholesale Meats in accordance with the percentages outlined above. (Dckt. #32). The Discharge and Disbursement Order provided, in relevant part, as follows:

> 1. Plaintiff ReliaStar Life Insurance Company's ("ReliaStar") ***claim for interpleader relief is GRANTED.***
>
> 2. Except as provided below, ReliaStar is hereby DISCHARGED WITH PREJUDICE from any and all liability to the Defendants and to any person, firm, estate, corporation, or entity on account of or in any way related to ReliaStar life insurance policy number AD20282801 with a face amount of $5,000,000 insuring the life of Eugene O. Fontanini and/or related to the handling or processing of any claims made under ReliaStar life insurance policy number AD20282801 with a face amount of $5,000,000 insuring the life of Eugene O. Fontanini.
>
> . . .
>
> 4. All of the above notwithstanding, ***nothing herein shall preclude or limit Defendants from pursuing their Counterclaim (Doc. 23) asserted against ReliaStar in this action, which shall remain pending.***

(Dckt. #32) (emphasis added).

The parties' attempts to settle defendants' counterclaim regarding interest were unsuccessful, and thereafter the parties filed their motions for judgment on the pleadings, (Dckt. ##59, 63), which are now fully briefed and ripe for resolution.

## II. STANDARD FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) permits a party to move for judgment on the pleadings after the complaint and answer have been filed by the parties. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing Fed.R.Civ.P.12(c)). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). As such, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As with a Rule 12(b)(6) motion, when resolving a motion for judgment on the pleadings, the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

## III. ANALYSIS

The parties seek judgment on the pleadings related to defendants' counterclaim for interest under either 215 ILCS 5/224 ("Section 224") or the Policy. ReliaStar argues that: (1) defendants are judicially estopped from any claim for penalty interest based on their consent to the entry of the Discharge and Disbursement Order; and (2) even if they are not estopped, because ReliaStar properly sought interpleader relief, defendants' claim for penalty interest fails under both (a) Section 224 and (b) the Policy. Defendants respond that (1) they are not estopped from asserting their claim for interest in light of the language of the Discharge and Disbursement Order itself; (2) they are entitled to interest under the plain language of the Policy; and (3)

notwithstanding the language of the Policy, Section 224 independently requires payment of interest.

### A. Judicial Estoppel Does Not Bar Defendants' Claim for Interest

"The doctrine of judicial estoppel prevents litigants from manipulating the court system by adopting inconsistent positions in different cases or different phases of the same case. *Pruitt v. Quality Lab. Servs., LLC*, No. 16 C 09718, 2018 WL 11476414, at *1 (N.D.Ill. June 26, 2018) (citing *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014)). "Judicial estoppel is designed to prevent the perversion of the judicial process and should be applied where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice." *Smith v. Metro. Prop. & Cas. Ins. Co.*, No. 3:20-CV-053-JD-MGG, 2020 WL 5946599, at *3 (N.D.Ind. Oct. 7, 2020) (cleaned up) (citing *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990)); *see also New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (noting that when determining whether to apply estoppel, one fact courts may consider is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."). However, "judicial estoppel should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake . . . or where there is only an appearance of inconsistency between the two positions but both may be reconciled." *Matter of Cassidy*, 892 F.2d at 642 (cleaned up). Ultimately, "estoppel is an equitable concept, and its application is therefore within the court's sound discretion." *Id.*

Here, within its discretion, the Court will not apply judicial estoppel to outright bar defendants' claim for interest. ReliaStar is certainly correct that defendants undisputedly agreed to the entry of the Discharge and Disbursement Order, which by its terms granted ReliaStar's

claim for interpleader relief and distributed the $5 million death benefit. Such an agreement could imply that defendants conceded that ReliaStar had a good faith basis to proceed with its interpleader claim, which would, in turn, conflict with defendants' counterclaim that they are entitled to penalty interest for ReliaStar's failure to pay. However, the Court cannot say that defendants' agreement to the Discharge and Disbursement Order amounts to an "intentional self-contradiction" that is now being used "as a means of obtaining unfair advantage." On the contrary, the language of the Discharge and Disbursement Order itself—agreed to by ReliaStar as well—provides that nothing therein "shall preclude or limit [d]efendants from pursuing" their counterclaim for interest. Given this statement, applying estoppel to bar defendants from pursuing their counterclaim on the merits "would work an injustice" and the Court thus declines ReliaStar's request to apply the judicial estoppel doctrine. *Matter of Cassidy*, 892 F.2d at 642.

Having determined that defendants are not judicially estopped from pursuing their counterclaim for interest, the Court turns to the merits of that claim, ultimately finding that it otherwise fails.

### B. ReliaStar is Entitled to Judgment on the Pleadings on Count I and Count II of the Counterclaim

On the merits, ReliaStar argues that (1) under the plain interpretation of Section 224, defendants are not entitled to interest because ReliaStar did not have "sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds" until the date of the Discharge and Disbursement Order in its properly filed interpleader action; and (2) that Section 224 supplants the interest provision of the Policy. The Court agrees.

**1. Defendants are not entitled to penalty interest under Section 224.**

The Illinois Insurance Code requires all life insurance policies issued in the state to contain certain provisions, including as relevant here, a provision (enacted in 2011) that provides for the following:

> (*l*) Interest shall accrue on the proceeds payable because of the death of the insured, from date of death, at the rate of 10% annually on the total amount payable or the face amount if payments are to be made in installments until the total payment or first installment is paid, ***unless payment is made within 31 days from the latest of the following to occur:***
>
> (1) the date that due proof of death is received by the company;
>
> (2) ***the date that the company receives sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds;*** or
>
> (3) the date that legal impediments to payment of proceeds that depend on the action of parties other than the company are resolved and sufficient evidence of the same is provided to the company; legal impediments to payment include, but are not limited to, (A) the establishment of guardianships and conservatorships, (B) the appointment and qualification of trustees, executors, and administrators, and (C) the submission of information required to satisfy State and federal reporting requirements.
>
> This provision need not appear in the policy, however, the company shall notify the beneficiary at the time of claim of this provision. ***The payment of interest shall apply to all policies now in force,*** as well as those written after the effective date of this amendment.

215 ILCS 5/224(1)(l) (emphasis added).

The parties dispute whether Section 224's interest provision is penal or remedial in nature. ReliaStar has presented some authority to support *its* proposition that Section 224's interest requirement is penal in nature. *See, e.g.*, *Emily Foley Mutz Residuary Trust v. Pacific Life Insurance Co.*, No. 1-05-3147, 940 N.E.2d 304 (Ill.App.Ct. April 18, 2007), Slip Op. attached at Dckt. #59-7 (suggesting that a prior version of Section 224 "has a penal effect."). And, it is well settled that statutes that are in "penal in nature" must be strictly construed.

*Gibson v. Chubb Nat'l Ins. Co.*, 601 F.Supp.3d 288, 299 (N.D.Ill. 2022); *Saskill v. 4-B Acceptance*, 487 N.E.2d 97, 98 (1985) ("Penal statutes are also construed strictly and in favor of the accused so as not to subject someone to a penalty unless the statutory language plainly imposes it"). On the other hand, defendants assert—without the citation of any supporting authority—that the "statute is remedial, not punitive [because] it ensures that insurers do not profit from holding death benefits that rightfully belong to beneficiaries." (Dckt. #62 at 13).

The Court need not resolve the parties' dispute on this issue. This is so because regardless of whether Section 224 is penal or remedial in nature, the same well-settled canons of statutory interpretation apply to its application. As the Supreme Court of Illinois has explained:

> The primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature. The best indication of legislative intent is the statutory language, which must be given its plain and ordinary meaning . . . Further, each word, clause and sentence of a statute must be given a reasonable construction, if possible, and should not be rendered superfluous. Where statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction. However, if the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy, as well as other sources such as legislative history. A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. In determining legislative intent, we may also consider the consequences that would result from construing the statute one way or the other, and, in doing so, we presume that the legislature did not intend absurd, inconvenient, or unjust consequences.

*Home Star Bank & Fin. Servs. v. Emergency Care & Health Org., Ltd.*, N.E.3d 128, 135 (Ill. 2014) (cleaned up).

The Court's application of these principles here supports a finding that defendants are not entitled to interest under Section 224 and that Section 224 supplants the interest provision of the Policy.

First, the clear and unambiguous language of Section 224 provides that the 10% interest must be paid unless payment is made within 31 days ***from the latest*** of either "the date that due proof of death is received" or "the date that the company receives sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds" or "the date that legal impediments to payment of proceeds . . . are resolved." Here, although it is undisputed that ReliaStar received due proof of death on March 29, 2024, at that time it *did not* have sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds. On the contrary, at the time JoAnne provided proof of death, ReliaStar had only been presented with the following:

- A claim for a $5 million death benefit for a beneficiary, Capitol Wholesale Meats, which had been dissolved 6 years before the claim was submitted;

- An affidavit from the purported former president of the since dissolved Capitol Wholesale Meats requesting that ReliaStar distribute the $5 million death benefit in accordance with the percentages she provided and, attesting further that the Plan of Liquidation "required" as such; and

- The Plan of Liquidation itself that provided uncertainty to the extent that it authorized certain individuals to both "negotiate and consummate sales of all or any portion of the assets, properties and rights of [Capitol Wholesale Meats], *or* to distribute assets . . . in kind to the Shareholders" in "accordance with their respective Percentage Interests." (Dckt. #23-4 at 2–3) (emphasis added).[4] And, again, ReliaStar maintains that Exhibit A to the Plan of Liquidation setting forth the percentage interests of the shareholders was *not* submitted with the claim.

Faced with a dissolved corporate beneficiary, a Plan of Liquidation that implicated the potential prior sale of assets (instead of the distribution demanded by JoAnne), and, to boot,

[4] We know now that Capitol Wholesale Meats did sell at least certain of its assets to Hormel Foods Corporation. (*See generally* Case No. 21-cv-00811; *see also* *https://www.hormelfoods.com/newsroom/press-releases/hormel-foods-adds-foodservice-portfolio-acquisition-fontanini-italian-meats-sausages/* (last visited September 29, 2026). Nonetheless, this fact (whether known or unknown to ReliaStar at the time it filed this action) does not alter the Court's analysis.

conflicting case law regarding the proper treatment of a death benefit payable to a dissolved corporate beneficiary,[5] ReliaStar properly initiated this interpleader action, (Dckt. #1), and sought to deposit the interpleader funds with the Court, (Dckt. #5), just two months after receiving JoAnne's claim. *See Aaron v. Merrill Lynch Pierce, Fenner & Smith*, 502 F.Supp.2d 804, 808 (N.D.Ind. 2007), *aff'd sub nom. Aaron v. Mahl*, 550 F.3d 659 (7th Cir. 2008) ("The purpose of an interpleader action is to protect a stakeholder from incurring expenses associated with double litigation and to protect it from facing the risk of double liability") (citing *See Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.*, 448 F.2d 501, 504 (7th Cir. 1971)).

Defendants maintain that whether JoAnne submitted Exhibit A to the Plan of Liquidation with her claim is a disputed issue of fact that precludes judgment on the pleadings. The Court disagrees. Even if JoAnne had submitted Exhibit A with her claim, it would not have remedied the conundrum that ReliaStar found itself in upon receipt of the claim. This is so because the Plan of Liquidation allowed for the possibility of the sale of some or all of the assets of Capitol Wholesale Meats in conjunction with its liquidation, (Dckt. #23-3 at 5). Moreover, only JoAnne—and none of the other defendant shareholders—filed a claim with ReliaStar. This left open the possibility that there would be a dispute amongst the defendant shareholders as to the proper distribution of the Policy's death benefit. Therefore, ReliaStar would have lacked sufficient information to trigger the application of 225 ILCS 5/224(1)(l)(2) even if JoAnne had submitted Exhibit A to the Plan of Liquidation when she submitted her claim.

It was only when ReliaStar's interpleader action was resolved on February 10, 2025, by way of the agreed Order of Discharge and Distribution, that ReliaStar had "sufficient information

[5] *Compare Smith v. Kyger* (*In re Estate of Yudin*), 2014 IL App (4th) 130171-U, 2014 WL 702818 (Dckt. #59-5) *with Smith v. Primerica Life Ins. Co.*, No. 4:19-CV-00246-BCW, 2020 WL 5588826 (W.D.Mo. Aug. 28, 2020).

to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds." As such, on the undisputed record before the Court, and contrary to defendants' assertions, interest was *not* triggered under Section 224 on the date ReliaStar received JoAnne's claim, and ReliaStar is entitled to judgment on the pleadings on Count I of the counterclaim.

**2. Section 224 supplants the interest provision of the Policy.**

Moreover, the Court also agrees that Section 224's interest provision—mandating 10% interest—supplants the interest provision set forth in the Policy, which, notably, calls for only 9% interest. Indeed, the plain unambiguous language of Section 224's interest provision (enacted in 2011) provides that "[t]he payment of interest shall apply to all policies now in force," which undoubtedly applies to the Policy here (issued in 2010).

It follows then that the proscribed deadline for paying such interest—that is, if payment is not made within 31 days of (the latest of), the receipt of due proof of death, sufficient information, or the date that legal impediments are removed—also applies and supplants the Policy's provision, which required payment of interest if the death benefit was paid more than 15 days after ReliaStar received "due proof of the death claim."[6] *See Mangano v. Jackson Nat'l Life Ins. Co.*, 723 Fed.Appx. 918, 929 (11th Cir. 2018) (noting that "interest on the Policies' proceeds is governed by [Section 224]," particularly the version of that Section "in force at the time the policyholder died," and confirming that "updated laws governing interest can apply to existing

[6] ReliaStar's inclusion of this provision in its Policy is not surprising. As ReliaStar notes, the Policy provision tracks the *prior* version of Section 244 in effect at the time the Policy was issued, which only required the insurer's receipt of due proof of loss in order to trigger the then-mandated 9% interest. (*See* Dckt. #64-1). In the same vein, defendants' reliance on cases such as *Hillgamyer v. ReliaStar Life Ins. Co.*, No. 11-CV-729-WMC, 2013 WL 12234289, at *4 (W.D.Wis. Feb. 27, 2013) and *Uehlein v. Jackson Nat. Life Ins. Co.*, No. 84 C 8875, 1985 WL 2021, at *1 (N.D.Ill. June 27, 1985), which addressed prior versions of Section 5/244, is similarly misplaced.

insurance policies."); *see also Nabor v. Occidental Life Ins. Co. of Cal.*, 396 N.E.2d 1267, 1272 (Ill.App.Ct. 1979) ("[T]he parties' rights with respect to interest [are] governed by statute which might be changed at any time at the pleasure of the legislature without impairing the contract or affecting any vested rights."). Because Section 244 supplants the Policy's interest provision, ReliaStar is entitled to judgment on the pleadings on defendants' claim for interest under the Policy in Count II of the counterclaim.

## CONCLUSION

For the foregoing reasons, the Court grants ReliaStar's motion for judgment on the pleadings, (Dckt. #59), and denies defendants' motion for judgment on the pleadings, (Dckt. #63). Judgment is entered in favor of ReliaStar on Counts I and II of defendants' counterclaim. With this Order, this matter is fully resolved.

**Date: September 30, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**